HYMAN et al. v. STERN et al.

No. 2964.

Circuit Court of Appeals, Fourth Circuit.

Sept. 19, 1930.

Herbert S. Falk, of Greensboro, N. C. (King, Sapp & King, of Greensboro, N. C., on the brief), for appellants.

R. M. Robinson, of Greensboro, N. C., for appellee.

Before NORTHCOTT, Circuit Judge, and BAKER and SOPER, District Judges.

·BAKER, District Judge.

The undisputed facts in this case, as found by the District Court, are as follows:

That at Greensboro, N. C., on the 23d day of December, 1925, voluntary petitions in bankruptcy were filed by A. L. Hyman, B. Hyman, and Charles Hyman as individuals and also as partners trading under the firm name and style of Hyman Bros.

That the order of adjudication was signed by the District Judge on December 24, 1925, and the matter referred to Clifford Frazier, Esq.

That the first meeting of creditors was held on the 6th day of January, 1926, and the bankrupts were allotted their homestead exemptions in the real estate, and it was agreed that they might assert their claims for personal property exemptions from the funds in the hands of the trustee.

That the individual bankrupts were indicted, tried, convicted, and sentenced for conspiracy to conceal assets in bankruptcy and they were also indicted for, and pleaded nolo contendere to, conspiracy to violate the postal laws by using the mails to defraud.

That the bankrupts concealed assets from the trustee and failed to list in their schedules certain policies of insurance and other property, and that they used the mails to defraud certain of their creditors by false and fraudulent financial statements, and did thereby defraud Ely & Walker Dry Goods Company of St. Louis, Mo., of $271.00.

That they removed from their store in Greensboro, N. C., goods, wares, and merchandise of the value of about $11,000 on one occasion, and various other goods, wares, and merchandise from said store on various other occasions; and that they concealed said assets from the trustee herein and still fraudulently conceal the same from the trustee.

That during a period of less than twelve months prior to bankruptcy there was a shrinkage of assets of the defendants unaccounted for in the sum of $62,800 except for fixtures and stock on hand of the value of $6,000.

That the trustee recovered and received the cash-surrender value of certain policies of insurance, but has never recovered any of the other property or assets concealed from him by said bankrupts, as set out in the findings above.

From the foregoing findings of fact the District Court concluded and held as a matter of law that said bankrupts were not entitled to recover or receive their personal property exemptions, and that they have forfeited the same by intentionally concealing and continuing to conceal from the trustee assets far in excess of the value of said personal property exemptions—all of which were deliberately and willfully done. Thereupon, the court denied said bankrupts their personal property exemptions as claimed by them.

### Question Involved.

Did the bankrupts forfeit their right to personal property exemptions allowed them under the Constitution and laws of the state of North Carolina by concealing assets from their trustee in bankruptcy exceeding in value the amount of the exemption?

The question presented by this appeal, so far as we can find, has never been decided by the Supreme Court of the United States or any Circuit Court of Appeals.

The appellants concede they cannot question the findings of fact by the District Court, but they believe that the conclusion of law therein set forth is erroneous.

Section 6 of the Bankruptcy Act of 1898 is as follows: "This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

Text-book writers all seem to be in accord with the proposition that the law of the state of the bankrupts' residence determines largely their rights to their exemptions where there has been a fraudulent concealment of assets.

First Collier (13th Ed.) page 305, is as follows: "The effect of fraudulent concealment of assets by a bankrupt on his right to exemptions will depend largely upon the statutes of the state. The fraudulent concealment must be proved to a reasonable certainty, and the bankrupt is entitled to the benefit of the doubt; fraud is not presumed. Where the exact amount of personal property concealed by a bankrupt can not be ascertained, he may not be allowed his exemptions until all his personal property is accounted for, or until the further order of the court"—citing In re Ansley Bros. (D. C. N. C.) 153 F. 983.

Third Remington on Bankruptcy (3d Ed.) § 1357, says: "So, also, there is a conflict

of authority as to whether a bankrupt forfeits his right to exemptions where he fraudulently disposes of his property, conceals or removes it from the jurisdiction. * * *"

Article 10, section 1, of the Constitution of North Carolina, grants the individual his personal property exemption in the following language: "The personal property of any resident of this State to the value of five hundred dollars, to be selected by such resident, shall be and is hereby exempted from sale under execution or other final process of any court issued for the collection of any debt."

There are numerous cases in North Carolina on the question of fraud barring the right to exemption. In Whitmore-Ligon Co. v. Hyatt, 175 N. C. 117, 95 S. E. 38, 39, Judge Hoke, in rendering the decision of the court, said: "* * * It has been repeatedly held with us that, when an insolvent debtor has made disposition of his property, real or personal, with the fraudulent intent to avoid the payment of his debts, and the conveyance has been successfully assailed by the creditors and the property, by judicial proceedings, made available on the vendor's debts, the latter is entitled to his homestead or personal property exemption. * * *"

There are also North Carolina cases which hold that an individual may claim his personal property exemption in property which he had fraudulently conveyed after the property had been recovered. Rose v. Bryan, 157 N. C. 173, 72 S. E. 960; Rankin v. Shaw, 94 N. C. 405.

The record in the present case shows definitely and conclusively that the trustee has been unable to find or recover any of the concealed property mentioned in these proceedings.

While it is well-established law that exemptions in behalf of unfortunate debtors are to be liberally construed in furtherance of the object of such statutes, so, also, must it be remembered that courts of bankruptcy proceed upon equitable principles and should no more sustain a positive fraud than would a court of equity.

In the face of the undisputed facts in this case, which show that the bankrupts have taken the law into their own hands and deliberately and willfully alloted to themselves many times more than the exemption laws of the state of North Carolina allows to honest men, they are now asking the court to place a premium on their deliberate and willful fraud by allowing them in addition thereto $500 each.

The statutes of exemption are made for honest debtors, not for those who willfully and deliberately conceal for their own use and refuse to turn over to their trustee many times the amount exempted to them by the laws of their states.

The real question presented for decision is whether a bankrupt, be he a knave or not, will be permitted by self-help to obtain a much larger exemption than the law allows, and, still retaining it, demand more. We think not.

Our conclusion is that the judgment of the District Court should be and is affirmed, with costs.

Affirmed.